UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Qwest Corporation,

               Plaintiff,

v.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 10-2372 ADM/SRN

City of Inver Grove Heights,
a municipal corporation; and Dakota County,

               Defendants.

_____

Blair E. Kanis, Esq., and Thomas W. Snyder, Esq., Kutak Rock LLP, Denver, CO; and Justice Ericson Lindell, Esq., and Tammera R. Diehm, Esq., Winthrop & Weinstine, PA, Minneapolis, MN on behalf of Plaintiff.

James M. Strommen, Esq., and Peter G. Mikhail, Esq., Kennedy & Graven, Chartered, Minneapolis, MN, on behalf of Defendant City of Inver Grove Heights.

Jay R. Stassen, Esq., Dakota County Attorney's Office, Hastings, MN, on behalf of Defendant County of Dakota.

_____

## I. INTRODUCTION

On October 14, 2010, the undersigned United States District Judge heard oral argument on Defendant City of Inver Grove Heights' ("Inver Grove Heights") Motion to Dismiss [Docket No. 15] and Defendant Dakota County's Motion to Dismiss [Docket No. 31]. The Defendants seek dismissal of all of Plaintiff Qwest Corporation's ("Qwest") claims. For the reasons stated herein, both motions are granted.

## II. BACKGROUND[1]

Qwest is a telecommunications service provider, with its principal place of business in

---

[1] In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

Denver, Colorado. Compl. ¶¶ 8-9. Dakota County is a county in Minnesota. Compl. ¶ 11. Inver Grove Heights is a Minnesota municipal corporation, and is located in Dakota County. Compl ¶¶ 10-11.

At issue is Qwest's use of several right-of-ways ("ROWs") located in Inver Grove Heights and Dakota County. Prior to April 2008, Qwest's telecommunications facilities were located on three separate ROWs in Inver Grove Heights. See Compl. ¶¶ 2, 65. In August 2006, Inver Grove Heights informed Qwest that the city was beginning a sewer expansion project (the "project") that would affect the use of the three ROWs. Compl. ¶¶ 15-16. The three ROWs are referred to by the parties as the "South Robert Trail ROW," the "80th Street ROW," and the "Babcock Trail ROW," and the Court adopts this terminology.

The South Robert Trail ROW is managed by the State of Minnesota. Compl. ¶ 17. On this ROW, Inver Grove Heights elected to use a method of sewer installation for the project known as the "directional boring method." The directional boring method does not disturb the surface, and did not require Qwest to relocate any of its facilities located on the South Robert Trail ROW. See Compl. ¶ 21.

For the 80th Street ROW and the Babcock Trail ROW, however, Inver Grove Heights chose to use an "open trench method" for installing sewer. Compl. ¶¶ 31, 43. The open trench method requires cutting the street and shoulder, and requires relocation of anything above the trench. Compl. ¶ 22. Here, Inver Grove Heights asked Qwest to relocate from both the 80th Street ROW and Babcock Trail ROW in order to accommodate the project. See Compl. ¶¶ 33, 45. The County, having decide to join the project and reconstruct the road above the trench, also asked Qwest to relocate. Compl. ¶ 55.

2

From the inception of the project, Qwest asked to be reimbursed for its relocation expenses and Inver Grove Heights refused. Compl. ¶¶ 50-54. Eventually, after some discussion, Inver Grove Heights, Dakota County, and Qwest entered into a "Relocation Agreement," effective in April 2008, wherein Qwest agreed to relocate but reserved all its rights to reimbursement. Compl. ¶ 65.

Qwest relocated and the project began in May 2008. Compl. ¶¶ 66-67. After relocation, further discussion regarding reimbursement ensued between Qwest, Inver Grove Heights, and Dakota County. Compl. ¶¶ 69-70. Inver Grove Heights and Dakota County continued to refuse to reimburse Qwest and this litigation followed. After starting this federal court action, Qwest commenced an action in state court against Inver Grove Heights and Dakota County, <u>Qwest Corp. v. City of Inver Grove Heights et al.</u>, Case No. 19HA-CV-10-5618, Dakota County District Court, asserting the same claims as asserted in this action.

### III. DISCUSSION

**A. Standard of Review**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. <u>Hamm</u>, 15 F.3d at 112; <u>Ossman v. Diana Corp.</u>, 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. <u>Ossman</u>, 825 F. Supp. at 880. "A motion to dismiss should be granted as a practical matter . . . only in the unusual case in which the plaintiff includes allegations that show on the

3

face of the complaint that there is some insuperable bar to relief." Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

**B. Minnesota Rule 7819.3100 (Counts III, IV)**

Qwest has asserted claims against Inver Grove Heights (Count III) and Dakota County (Count IV) for violation of Minnesota Rule 7819.3100. That rule requires a ROW user to relocate at its own expense when *necessary*, not merely when convenient, for certain government functions. Minn. R. 7819.3100 (emphasis added). The Defendants argue that Rule 7819.3100 does not create a private cause of action. The resolution of these claims pivots on whether Rule 7819.3100 creates a private cause of action that can be asserted in this Court.

The Minnesota Public Utilities Commission ("MPUC") promulgated Rule 7819.3100 pursuant to Minn. Stat. § 237.163 as a statewide standard for use of public ROWs. Under Minnesota law, statutes do not give rise to a civil cause of action "unless the language of the statute is explicit or it can be determined by clear implication." Becker v. Mayo Found., 737 N.W.2d 200, 206 (Minn. 2007) (citations omitted).

The same statutory provision, Minn. Stat. § 237.163 subd. 8, that authorizes Rule 7819.3100 also allows for its enforcement. That statute states, "The Public Utilities Commission is authorized to review, upon complaint by an aggrieved telecommunications right-of-way user, a decision or regulation by a local government unit that is alleged to violate a statewide standard." Minn. Stat. § 237.163 subd. 8(b). This language explicitly contemplates review by the MPUC. However, it falls far short of creating clear implication that a plaintiff may assert a private cause of action in federal court. To the contrary, the specific language of the statute strongly implies that the legislature intended all grievances regarding Rule 7819.3100 be heard

by the MPUC. Therefore, Qwest's claims invoking Rule 7819.3100 are dismissed.

**C. Section 1983 (Counts V, VI, VII, VIII)**

Qwest has asserted two claims against Inver Grove Heights and two claims against Dakota County under 42 U.S.C. § 1983 for violation of the Fifth Amendment's Takings Clause as it applies to the city and county. Takings claims under § 1983 are not ripe for federal adjudication until the party asserting the claims has exhausted its state remedies. See Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 197 (1985) ("[U]ntil [Respondent] has utilized [Tennessee's inverse condemnation] procedure, its taking claim is premature."). If a party does not exhaust state remedies, dismissal for failure to state a claim is permissible. See Kottschade v. City of Rochester, 319 F.3d 1038, 1040-42 (8th Cir. 2003) (affirming dismissal of takings claims where state remedies were not exhausted).

Qwest concedes that it has not exhausted state remedies and in fact has commenced a Minnesota state court action against the Defendants. However, Qwest asks the Court to stay, not dismiss, its takings claims. In light of the disposition of Qwest's other claims here, the Court finds no reason to stay these proceedings.

**D. Declaratory Judgment (Counts I and II)**

Qwest also seeks declaratory judgment against both Inver Grove Heights (Count I) and Dakota County (Count II) determining that neither had authority to demand relocation given the circumstances. Federal courts have authority to issue a declaratory judgment for matters within their jurisdiction when an "actual controversy" exists. 28 U.S.C. § 2201. However, district courts have discretion to determine whether to entertain a declaratory judgment action, even when jurisdiction is otherwise appropriate. Cincinnati Indem. Co. v. A & K Const. Co., 542

5

F.3d 623, 625 (8th Cir. 2008). Where a declaratory judgment would serve no useful purpose, a district court may exercise its discretion and stay or dismiss the action. Id.

In this case, Qwest has commenced a parallel state court action that may determine the rights it seeks to clarify through its declaratory judgment action. Further, the rights Qwest seeks to clarify are matters of state law. As such, the Court will not make a pronouncement on a matter of state law. These claims are dismissed.

**E. Unjust Enrichment (Count IX)**

The final count of the Complaint (Count IX) is for unjust enrichment and is asserted solely against Inver Grove Heights. To prevail on a claim for unjust enrichment, a plaintiff must show that the defendant "knowingly received something of value, not being entitled to the benefit, and under circumstances that would make it unjust to permit its retention." Southtown Plumbing, Inc. v. Har-Ned Lumber Co., 493 N.W.2d 137, 140 (Minn. Ct. App. 1992).

Thus, whether Qwest can prevail on this claim turns on whether "unjust" circumstances exist. The common law rule is that governmental entities can demand relocation from ROWs without reimbursing expenses. New Orleans Gaslight Co. v. Drainage Comm'n of New Orleans, 197 U.S. 453, 460 (1905). Indeed, the ROWs are public property managed by Inver Grove Heights and Dakota County. See generally Compl. Under the common law, then, Qwest's claims would fail.

However, Qwest argues that relocation without reimbursement is unjust due to the necessary-rather-than-convenient requirement of Rule 7819.3100. Therefore, Qwest's unjust enrichment claim turns on the construction of Rule 7819.3100. When a claim is within the "special competence" of an administrative agency, the court may dismiss that claim under the

"primary jurisdiction doctrine." United States v. Western Pac. R.R. Co., 352 U.S. 59, 63-64 (1956). The construction of Rule 7819.3100 is within the special competence of the MPUC, the agency charged with promulgating and enforcing that rule. For this reason, Qwest's unjust enrichment claim is dismissed.

Furthermore, where, as here, concurrent litigation is proceeding in both state and federal courts, federal courts may dismiss an action for limited reasons, including avoiding piecemeal litigation. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 818 (1976). Here, the Court has decided that the other claims brought by Qwest are more appropriate for a state forum. Qwest has already commenced a state action asserting identical claims. The conservation of judicial resources demands avoiding piecemeal litigation.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Inver Grove Heights' Motion to Dismiss [Docket No. 15] is **GRANTED**;

2. Dakota County's Motion to Dismiss [Docket No. 31] is **GRANTED**; and

3. Counts I, II, III, IV, V, VI, VII, VIII, IX of the Complaint [Docket No. 1] are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: December 10, 2010.